18340

Robert V. HUDSON, Appellant, v. RESERVE LIFE INSURANCE COMPANY, Respondent

(141 S. E. (2d) 926)

*Messrs. Lumpkin, Kemmerlin & Medlock,* of Columbia, *for Appellant,*

*Joseph L. Nettles, Esq.,* of Columbia, *for Respondent,*

April 28, 1965.

BRAILSFORD, Justice.

The parties agree that the sole question involved on this appeal is whether Section 2, (c) item 2 of Act No. 829 of the General Assembly of South Carolina for 1956, which is codified as Section 37-474, Code of Laws 1962, applies to a policy of accident and health insurance, issued by respondent to appellant on December 28, 1954, for an initial term of two months, and which, by virtue of the payment of successive premiums as provided by the policy, was of force on April 10, 1961, when a covered loss occurred.

The Code section is a part of Title 37, Chapter 6, relating to accident and health insurance, and provides that "each

such policy delivered or issued for delivery to any person in this State shall contain the provisions specified in this section," including:

"(2) A provision as follows:

"TIME LIMIT ON CERTAIN DEFENSES: (a) After two years from the date of issue of this policy, no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability, as defined in the policy, commencing after the expiration of such two-year period."

It is conceded that the Act of 1956 was prospective in its operation, and, therefore, inapplicable to contracts which were in existence at the time of its adoption. This concession would resolve the issue but for appellant's contention that a new contract arose upon the payment and acceptance of each renewal premium; hence, the quoted provisions of the statute became a part of the policy upon its renewal for an additional term after the approval of the Act on March 31, 1956. This raises the question of whether the insurance in force after the payment and acceptance of each renewal premium was a new and independent contract or an extension or continuation of the original contract. The answer to this question depends upon the intention of the parties as expressed in the writing. Am. Jur., Insurance, Section 357, 44 C. J. S., Insurance, § 283. We think it clear from the terms of the policy that the parties contemplated continuous insurance, rather than successive independent contracts.

The policy acknowledged an "initial payment" of $9.00, which kept the insurance in force for the "initial term" of two months. Thereafter, the "monthly premium" was $1.50, with the privilege of paying "renewal premiums" monthly or quarterly, semi-annually or annually at slightly reduced rates.

The insuring agreement covers only losses resulting from accident or from sickness originating "while *this policy* is in force and more than *15 days after the date hereof.*" As to an

important group of diseases, the policy applies only "if hospital confinement begins *after this policy has been in force for six months* or more." (Emphasis ours.)

The provisions of the policy as to reinstatement apply "if *default* be made in the payment of the *agreed premium for this policy.*" Default occurs if any "premium payment be not received * * * on or before the date *when due* or within the grace period provided herein." (Emphasis ours.)

Inferentially, the initial payment of $9.00 included $6.00 for the cost of writing and issuing the policy, which could thereafter be kept in force by payment of premiums at the rate of $1.50 per month. This disparity in cost is a strong indication that continuous insurance was contemplated. The references in the policy to agreed premiums, dates when premiums are due, default in payment and reinstatement are inconsistent with the view that the policy terminated on each premium paying date or within fifteen days thereafter.

The exclusion from coverage of a loss resulting from any sickness originating within fifteen days of the date of the policy, and the exclusion of loss resulting from certain diseases, including any disease of the heart or circulatory system, until the policy has been in force for six months, are even more persuasive of the view which we adopt. Otherwise, an insured might pay premiums over a period of years after purchasing this insurance, yet never become entitled to the full coverage of the insuring agreement. This would be a harsh result, not required by the provision that the policy was renewable only at the option of the company or by any other language of the contract. The optional renewal provision merely gave the company the right to cancel at the end of the grace period following any premium paying date. It did not affect the continuity of the contract, or the maturity of rights thereunder, so long as premiums were paid and accepted.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.