529 So.2d 1170 (1988)
Joseph R. LANDI and Ida E. Landi, Appellants,
v.
NATIONWIDE MUTUAL FIRE INSURANCE CO., Fireman's Fund Insurance Company, R.W. "Bob" Brown, and Bob Brown Insurance, Inc., Appellees.
No. 86-1863.
District Court of Appeal of Florida, Second District.
July 8, 1988.
Rehearing Denied August 22, 1988.
*1171 Roy L. Glass of Law Offices of Roy L. Glass, P.A., St. Petersburg, for appellants.
Nelly N. Khouzam of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, for appellees.
LEHAN, Judge.
We affirm the trial court's final judgment which determined that plaintiffs, whose insurance policy provided for $15,000/$30,000 uninsured motorist coverage, were not entitled to uninsured motorist coverage equal to the $100,000/$300,000 bodily injury coverage provided by the policy. This case is controlled by Marchesano v. Nationwide Property & Casualty Insurance Co., 506 So.2d 410 (Fla. 1987), which affirmed and agreed with the reasoning of this court in Nationwide Property & Casualty Insurance Co. v. Marchesano, 482 So.2d 422 (Fla. 2d DCA 1985).
We do not agree with the plaintiffs' arguments that Marchesano is materially distinguishable. First, it is not determinative that the policy involved in this case, in contrast to that in Marchesano, was originally written prior to enactment of the statute which requires written rejection of uninsured motorist coverage equal to bodily injury coverage and the periodic notifications referred to in the Marchesano opinions. In any event, the policy involved in this case was renewed after the enactment of those requirements, and "[t]he general rule in Florida is that upon each renewal of an insurance policy an entirely new and independent contract of insurance is created." Marchesano, 506 So.2d at 413.
Second, it is not determinative that in Marchesano, in contrast to this case, the insured had signed a form which recited that uninsured motorist coverage had been explained to the insured and that the insured had rejected limits of such coverage higher than those provided in the policy. As this court said, that rejection was not binding upon the insured under the circumstances of that case. 482 So.2d at 424.
Third, it is not determinative that the supreme court's Marchesano opinion contains the statement that "such periodic notice will not act retroactively to cure an insurance company's failure to obtain a written rejection at the time the original policy is procured... ." 506 So.2d at 413. As the supreme court also said in Marchesano, "even if [the insured] did not knowingly reject the statutorily mandated uninsured motorist coverage at the time of the initial purchase, such a rejection subsequently occurred when the [insured] failed to act upon the form notification... ." Id. That is, while such periodic notices may not operate ab initio to cure an insurance company's failure to obtain a written rejection of higher uninsured motorist coverage limits, they do, when in the proper form and not acted upon by the insured so as to elect higher limits, render it unnecessary that there be a written rejection of limits of coverage equal to bodily injury limits provided in the policy. In this case the automobile accident for which higher limits of uninsured motorist coverage than those provided by the policy are claimed occurred after proper such notices had been sent to, and were not acted upon by, plaintiffs. Thus, that such notices did not cure the initial failure of the insurance company to obtain a written rejection is irrelevant.
*1172 Plaintiffs also argue that the amendment to section 627.727(1), which was effective October 1, 1987, should be applied retroactively and should be construed as clarifying prior legislative intent and as in effect representing a legislative overruling of Marchesano. That amendment provides that "Receipt of this notice [the form notification enclosed with premium notices provided for in that section] does not constitute an affirmative waiver of the insured's right to uninsured motorist coverage where the insured has not signed a selection or rejection form." We do not agree with this argument. "[A] law is presumed to operate prospectively in the absence of clear legislative expression to the contrary... ." Dewberry v. Auto-Owners Insurance Co., 363 So.2d 1077, 1079 (Fla. 1978). See also VanBibber v. Hartford Accident & Indemnity Insurance Co., 439 So.2d 880 (Fla. 1983); Seddon v. Harpster, 403 So.2d 409 (Fla. 1981); Foley v. Morris, 339 So.2d 215 (Fla. 1976); Trustees of Tufts College v. Triple R Ranch, Inc., 275 So.2d 521 (Fla. 1973). Neither the 1982 amendment nor legislative history of the amendment which we have obtained refers to Marchesano or otherwise indicates that the legislative intent explicitly found in Marchesano to have existed had not existed. See House Staff Analysis, Committee on Insurance, House Bill 1029 (July 1, 1987). Compare Ivey v. Chicago Insurance Co., 410 So.2d 494 (Fla. 1982) (a statutory amendment is to be applied retroactively when its legislative history indicates that the amendment was to clarify prior legislative intent).
Since, as we have explained, plaintiffs' failure to act upon the notices bound plaintiffs to the uninsured motorist coverage provided in the policy, we need not address the remaining points raised on appeal concerning the initial issuance of the policy.
Affirmed.
DANAHY, A.C.J., and FRANK, J., concur.